ISAAC R. ELWOOD AND OTHERS *v.* TREASURER OF VERMONT.

*Bank.   Safety fund.   Liability of banks to contribution.*

Under the general banking law of 1831 the entire safety fund was made liable for the payment of all the debts of any insolvent bank, exclusive of capital stock, and this without reference to the time, when the debts accrued, or when the insolvency accrued, or at what time any particular bank began to contribute.

Hence that part of the fund contributed by any particular bank could not be withheld from being appropriated for the payment of the debts of an insolvent bank, upon the ground that the bank, for the payment of whose debts it was required, became insolvent previous to the time, when the bank, contributing such part of the fund, came into existence under its charter.

PETITION for a writ of *mandamus.* It was alleged, that an order had been made by the chancellor, that the treasurer of the state pay from the bank safety fund the sum of $34,617,23, for the purpose of paying the debts of the Essex Bank, and that he refused to do so. The treasurer filed his answer, alleging that he had paid the entire fund, subject to his control, except that part of it which had been contributed by the Bank of St. Albans since its re-charter,—that bank having come into existence, under its re-charter, since the Essex Bank became insolvent.

*C. W. Prentiss* for petitioners.

——————— for Bank of St. Albans.

The opinion of the court was delivered by

REDFIELD, J.  This is a motion for a peremptory *mandamus* against the defendant, to require him to pay over a sum of money in his hands, belonging to the bank safety fund, and contributed by the Bank of St. Albans, since its re-charter.  This is claimed, to make up the deficiency in the redemption of the bills of the Essex Bank; and the application is resisted upon the ground, that the money is not liable for any such purpose.  The Bank of St. Albans have appeared and been heard in the matter.  The important facts are, that the Bank of St. Albans was chartered in 1825, and re-chartered in 1836.  It went into operation, under its re-charter, in January, 1840, soon after the expiration of its first charter.  The Essex Bank became insolvent, and was put under injunction and in a course of being wound up, in October, 1839.

By the general banking law of 1831, (which is re-enacted in the Revised Statutes,) by which the safety fund was created, it was provided, that all banks, chartered, or re-chartered, at that or any future session of the legislature, should be " subject to the provisions of that act."  By section two it was provided, that each bank should pay to the treasurer of the state three fourths of one *per cent.* on the capital stock paid in, annually, on the third Thursday of October. By section four, that this should continue, until each bank should have paid in four and a half *per cent.* on its capital stock,—which should " remain inviolably appropriated to the payment of the debts, exclusive of capital stock, of any of the said corporations, which shall become insolvent."  By section eight, if the fund shall be reduced by payment of the debts of any insolvent corporation, " every moneyed corporation then existing, which shall be subject to this act, and every one thereafter chartered, shall be assessed again by the treasurer, not exceeding the original rate, until the fund shall be restored to four and a half *per cent.* on the capital stock of said bank."  Section eleven provides, that, if the funds in the treasurer's hands shall not be sufficient to pay the debts of any insolvent bank, the several solvent banks shall be assessed according to section eight, until the fund is sufficient to pay them, and then they shall be paid. Thus the law stood, until after the Bank of St. Albans went into operation under its re-charter.

This statute is doubtless very imperfect and unequal in many respects. But there does not seem to be any provision, for making the debts of an insolvent bank a charge upon the bank fund upon any rule of equitable obligation among the several banks coming under the general denomination of safety fund banks. It is the fund, and the entire fund, which is made liable for the payment of all the debts of any insolvent bank, exclusive of capital stock,—and this without reference to the time, when the debts accrued, or when the insolvency occurred, or at what time any particular bank began to contribute.

If this bank fund were to be marshalled upon the debts of an insolvent bank according to the law of partnership, it is obvious, something of that kind would have been provided for. It would certainly require a very different account of the proceedings, before the chancellor, from a mere statement of the amount of indebtedness and of assets,—which is all that the statute seems to require, preliminary to making an order upon the chancellor.

The statute of 1840, which was enacted after the re-charter of the Bank of St. Albans, could have no effect upon its liability, and was not intended to have. And the provision, that banks subsequently chartered should not be liable to contribute to pay the debts of banks, which had become insolvent before such banks were chartered, was altogether a new provision, and enacted with reference to the Essex Bank, doubtless, and because it was apprehended, that, without such a provision, even banks subsequently chartered must contribute to pay the debts of that bank.

We think the writ must issue, and it is allowed.